IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



TRANSCOM ENHANCED
SERVICES, INC.,

    Plaintiff,

VS.

AT&T INC.,

    Defendant.

§
§
§
§
§
§ NO. 4:10-CV-311-A
§
§
§
§

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion of defendant, AT&T Inc., to dismiss this action for declaratory judgment brought by plaintiff, Transcom Enhanced Services, Inc. Plaintiff filed a response, in which it also sought leave to amend its complaint, and defendant filed a reply. Having considered the filings of the parties, the complaint, and applicable legal authorities, the court concludes that defendant's motion should be granted, and plaintiff's motion to amend should be denied.

I.

Plaintiff's Claims and Defendant's Motion

Plaintiff's claims arise from its assertion that it is an "enhanced service provider" as defined in applicable telecommunications laws, and accordingly is exempt from paying

access charges assessed against common carriers under those laws and regulations. The court does not consider that a detailed summary of the lengthy thirty-six-page complaint would be beneficial. However, the court finds that a breakdown of the various sections of the complaint would be useful in explaining the basis of the court's decision.

The first five pages of the complaint generally summarize the background and jurisdictional basis of the complaint. The next eleven pages provide regulatory and industry background concerning the Federal Communications Commission ("FCC"), the Communications Act of 1934 and Telecommunications Act of 1996, history of the predecessor to defendant, described by plaintiff as the "Former AT&T," and a discussion of telephone services, access charges, and the enhanced services provider exemption.

The complaint next discusses plaintiff's predecessor, DataVoN,[1] its involvement in 2002 and 2003 in bankruptcy proceedings, and actions taken by SBC Communications, Inc. ("SBC"), during and around the time of the bankruptcy proceedings.[2] The complaint further details actions by the Former

---

[1] Plaintiff purchased the assets of DataVoN around May 2003.

[2] SBC and the Former AT&T merged in 2005 to create the entity that is now defendant.

AT&T around 2003 or 2004 to avail itself of the enhanced service provider exemption, which was rejected by the FCC, and subsequent litigation commenced in April 2004 by SBC against the Former AT&T. The complaint also describes litigation commenced in September 2004 by certain SBC subsidiaries against plaintiff and others in cause number 4:04-CV-01303-CEJ in the Eastern District of Missouri, Eastern Division ("Missouri Litigation").[3]

The complaint in one paragraph mentions litigation filed in 2005 by plaintiff against the Former AT&T and SBC in this court as case number 4:05-CV-075-Y, Judge Terry R. Means presiding, in which plaintiff sought injunctive relief against defendants. Many of the factual allegations in the 2005 complaint are similar to those alleged in the instant action, and the core issue in that case is the same as here: whether plaintiff is entitled to claim the enhanced service provider exemption such that it is exempt from paying access charges. On February 16, 2005, Judge Means dismissed plaintiff's claims against the Former AT&T on the basis of a mandatory forum-selection clause in the parties' agreement that placed jurisdiction in New York City, and dismissed SBC on

---

[3] In August 2005 the district court in the Missouri Litigation referred that case to the FCC under the doctrine of primary jurisdiction. Although the district court originally dismissed the Missouri Litigation, in September 2005 the court amended its judgment and stayed the case pending resolution by the FCC. The case is still pending in the Eastern District of Missouri.

the basis of the first-to-file rule due to the Missouri Litigation.[4]

The next several pages discuss conflicts between the Former AT&T and plaintiff, and between SBC and plaintiff, regarding plaintiff's payment of, or failure to pay, access charges. The dispute ultimately led to the suspension by the Former AT&T of service to plaintiff in 2005. As a result of the termination of service, plaintiff in February 2005 filed for bankruptcy protection. The complaint then describes actions taken by plaintiff, the Former AT&T, and SBC pertaining to the 2005 bankruptcy and the Missouri Litigation. The only post-2005 allegation pertaining to defendant involves the Missouri Litigation. The complaint alleges that on January 12, 2010, the plaintiffs in the Missouri Litigation filed a "Response to the Separate Submission of the Transcom Defendants,"[5] stating that they

> register disagreement with Transcom's apparent position that its 2006 bankruptcy plan immunizes it from all liability for access-charge avoidance, including

---

[4] There is no record that plaintiff ever pursued its claims against the Former AT&T in any New York court.

[5] The district court in the Missouri Litigation ordered the parties to submit a Joint Proposed Plan for proceeding with the litigation in the event the court lifted the stay and allowed the case to proceed. All of the parties filed a joint submission, except the plaintiff here, which filed separately to assert its contention that claims against it were discharged in its bankruptcy proceeding.

4

>    liability stemming from any actions Transcom has taken
>    after its discharge from bankruptcy.

Compl., Ex. R at 1. According to the complaint, this response by the plaintiffs in the Missouri Litigation

>    makes clear that the AT&T organization as a whole, and
>    as a matter of company policy, continues to dispute
>    [plaintiff's] status as an [enhanced service provider],
>    and continues to assert that [plaintiff] is obligated
>    to pay access charges, despite multiple court rulings
>    to the contrary.

Id. at 33-34 ¶ 76.

In summary fashion, plaintiff describes the purpose of the instant action as follows:

>    Transcom seeks a declaration from this Court, binding
>    on the entire AT&T organization, including all of the
>    companies that operate under the AT&T umbrella, that
>    Transcom qualifies as an ESP and is not obligated to
>    pay access charges or otherwise hew to AT&T's skewed
>    and artificial notion of how enhanced/information
>    service and/or VoIP providers must operate.

Compl. at 3. However, plaintiff never adequately defines what it means by the words "the entire AT&T organization, including all of the companies that operate under the AT&T umbrella." Plaintiff does not add clarity by its allegation that "AT&T is the largest communications holding company in the world by revenue and operates globally under the AT&T brand," id. at 4, or its

5

allegation that:

> In that AT&T and its subsidiaries "operate as a single functional and organic identity with the subsidiaries being mere departments of the parent," this suit is brought against AT&T for purposes of binding the entire AT&T organization.

Id. at 5 (footnote omitted).

The allegations of the complaint make clear that plaintiff is not interested in a declaratory judgment against any single entity but, instead, "seeks a declaratory judgment that would bind the entire AT&T organization" adding that such a declaratory judgment "is the only meaningful avenue of relief." Id.

Defendant seeks dismissal of plaintiff's complaint on two grounds: first, because plaintiff has failed to allege or establish any justiciable controversy between plaintiff and defendant; and, alternatively, the court should exercise its discretion to dismiss this declaratory judgment action because it is being pursued for an improper purpose.

II.

Analysis

Plaintiff seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202. The Act requires that an "actual controversy" exist between the parties before a federal court may exercise subject matter jurisdiction over a

declaratory judgment action. Id. at 2201(a); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937). In evaluating a declaratory judgment action, the court undertakes a three-step inquiry: (1) is the action justiciable; (2) if so, does the court have authority to grant the declaratory relief requested; and (3) will the court exercise its broad discretion to consider the action. Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000). Here, each step of the inquiry leads to the conclusion that the court should not entertain this declaratory judgment action.

A. Lack of Authority to Grant the Declaratory Relief Requested

Starting at the second step, the court notes that it lacks the authority to grant the declaratory relief requested in this action as it is now presented by plaintiff. The only defendant named by plaintiff is AT&T Inc. Although the complaint seeks a declaratory judgment binding the entire AT&T organization, plaintiff failed to name any of defendant's subsidiaries as a party. Further, plaintiff has alleged no facts that justify treating defendant as the alter ego of its subsidiaries so as to disregard their separate corporate identities and warrant a declaratory judgment against defendant's entire organization.

The Fifth Circuit has developed a "laundry list" of factors to consider when determining if a subsidiary is the alter ego of its parent, including, <u>inter alia</u>, whether the parent and subsidiary have common stock ownership, common directors or officers, common business departments, and file consolidated financial statements and tax returns; whether the parent finances the subsidiary or caused the incorporation of the subsidiary; whether the subsidiary is grossly undercapitalized; and whether the two entities observe corporate formalities. <u>United States v. Jon-T Chems., Inc.</u>, 768 F.2d 686, 691-92 (5th Cir. 1985). Fifth Circuit precedent makes clear that "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." <u>Id.</u> at 691. Defendant contends that the complaint fails to allege any of the aforementioned factors and has thus established no basis on which to find it is the alter ego of its subsidiaries.

The court agrees with defendant. The complaint repeatedly asserts it seeks a judgment binding the "AT&T organization." <u>See</u>, <u>e.g.</u>, Compl. at 1-3, 34. In support, the complaint alleges that defendant is "in the process of consolidating all of the activities of Former-AT&T-related companies and SBC-related

companies under the overarching AT&T brand," Compl. at 4 ¶ 6, and repeats statements from defendant's website that it "rank[s] among the leading providers of telecommunications services in the United States and the world," that its "services and products are marketed under the AT&T brand name," and that in January 2010 it employed "approximately 281,000 persons." Id. The court finds none of these allegations sufficient to hold that defendant is the alter ego of its subsidiaries. Although a finding of alter ego is made on the totality of the circumstances, the complaint makes no attempt to allege any of the aforementioned factors considered significant by Fifth Circuit precedent.

Plaintiff also relies on a 2003 unpublished decision from the Eastern District of Pennsylvania for the proposition that defendant and its subsidiaries "operate as one large company, not separate entities." Id. & n.7 (quoting Directory Dividends, Inc. v. SBC Commc'ns, Inc., 2003 WL 21961448 (E.D. Pa. July 2, 2003). Plaintiff's reliance on Directory Dividends is misplaced. That court, in finding personal jurisdiction over SBC based on the citizenship of a few of its subsidiaries, relied on SBC's own press releases declaring, among other statements, that it was transforming itself from separate, regional companies into a company with a single identity. No such press release or other

9

declaration from defendant is in the record here, and the above-quoted statements from defendant's website are distinguishable from the press release quoted in Directory Dividends. Further, the court does not find persuasive a seven-year-old decision pertaining to defendant's predecessor that says nothing about the corporate structure of the present-day defendant.

Considering plaintiff's alleged goal in bringing this action, there is nothing to be gained from pursuing it as it is now constituted.

B. Absence of Justiciable Controversy

Plaintiff fails at the first step as well. Whether an action is justiciable requires the existence of an actual case or controversy between the parties. Id. "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." Shields v. Norton, 289 F.3d 832, 835 (5th Cir. 2002). A justiciable controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," rather than "an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007) (internal citations

omitted). As summarized by the Supreme Court,

> [b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Id. at 127. Defendant contends that plaintiff has alleged nothing to show the existence of any "real and immediate" controversy because nothing in the complaint alleges that defendant has threatened or commenced legal action against plaintiff or undertaken any other action that would warrant a declaratory judgment.

A review of the complaint finds no allegations of any actual controversy between plaintiff and defendant. Nowhere in the thirty-six-page complaint does plaintiff allege that defendant has threatened legal action or engaged in other conduct against it as would create a "real and immediate" controversy. As demonstrated by the description of the complaint set forth in Section I, supra, all of the actions of which plaintiff complains occurred several years prior to the commencement of the instant action, none of which describe a current actual case or controversy between plaintiff and defendant. The court finds that the allegations in

plaintiff's complaint are too few and too speculative to state a justiciable controversy.

Moreover, the complaint fails to allege the existence of any current case or controversy between plaintiff and defendant's subsidiaries other than those already in the Missouri Litigation. The complaint contains no allegation that defendant's subsidiaries have threatened litigation or other action against it other than the subsidiaries already involved as plaintiffs in the Missouri Litigation. Litigation already commenced cannot provide a controversy warranting a declaratory judgment. See, e.g., Chevron U.S.A., Inc. v. Traillour Oil Co., 987 F.2d 1138, 1153 (5th Cir. 1993) (the ripeness inquiry for a declaratory judgment action "focuses on whether an injury <u>that has not yet occurred</u> is sufficiently likely to happen to justify judicial intervention" (emphasis added) (internal citations omitted)). As far as the court can glean from the complaint, the only actual controversy between plaintiff and any entity related to defendant is the subject of the Missouri Litigation.

C. <u>The Court Chooses Not to Proceed Further with the Request for Declaratory Relief</u>

The court can think of nothing productive that would be gained from pursuit of plaintiff's request for grant of

declaratory judgment "against AT&T for purposes of binding the entire AT&T organization." Compl. at 5. Even if subsidiaries of defendant were named as defendants in this action, the court would be faced with the already existing Missouri Litigation between plaintiff and defendant's subsidiaries. To whatever extent the court might be viewed to have discretion to consider plaintiff's request for declaratory relief in this action, the court declines to exercise that discretion in favor of pursuing the action further. Pursuit of this action would not serve the purpose of judicial economy. The court certainly does not wish to entertain the alternative request made by plaintiff for leave to amend its complaint to name as additional defendants the Missouri plaintiffs and "John Doe Entities 1-100," representing "every AT&T subsidiary operating in the United States that directly or indirectly derives any of its revenues from access charges." Pl.'s Resp. to Def.'s Mot. to Dismiss at 2-3, 20.

*   *   *   *   *

For each of the reasons given above, the court has concluded that the motion to dismiss should be granted.

## III.

## Order

Therefore,

The court ORDERS that defendant's motion to dismiss be, and is hereby, granted, and that the above-captioned action be, and is hereby, dismissed.

The court further ORDERS that plaintiff's motion for leave to amend be, and is hereby, denied.

SIGNED August 11, 2010.

_____
JOHN McBRYDE
United States District Judge